UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DOROTHY L. MOORE-DUNCAN,                    :
                                            :Civil Action No. 08-1896(RMB)
              Plaintiff,                    :
                                            :
         v.                                 :        **OPINION**
                                            :
SHEET METAL WORKERS'                        :
INTERNATIONAL ASSOCIATION,                  :
LOCAL 27, AFL-CIO,                          :
                                            :
              Defendant.                    :


Appearances:

Henry R. Protas, Esquire
Carmen P. Cialino, Jr., Esquire
National Labor Relations Board Region 4
615 Chestnut Street, 7th Floor
Philadelphia, Pennsylvania  19106
(215) 597-7650
     Attorneys for Plaintiff

Brett I. Last, Esquire
O'Brien, Belland & Bushinsky, LLC
2111 New Road, Suite 101
Northfield, New Jersey 08225
(609) 677-7930
     Attorney for Defendant

**BUMB,** United States District Judge:

     This matter comes before the Court upon the Plaintiff's,

Dorothy L. Moore-Duncan, Regional Director of the Fourth Region

of the National Labor Relations Board ("NLRB," "the Board," or

"Petitioner"), petition for relief under Section 10(*l*) of the

National Labor Relations Act, 29 U.S.C. § 160(*l*) (the "Act").

The Defendant, the Sheet Metal Workers International Association,

Local 27, AFL-CIO ("Sheet Metal" or "Local 27") is the plaintiff in a related case pending before this Court, <u>Sheet Metal Workers International Association, Local Union 27, AFL-CIO v. E.P. Donnelly, Inc., et al</u>, Civil Action No. 07-3023 (RMB) (the "Sheet Metal Workers' Action").  In its petition, the Petitioner seeks to enjoin Sheet Metal from pursuing its case against one of the defendants in the Sheet Metal Workers' Action, E.P. Donnelly, Inc., ("Donnelly").  The Board argues that because Donnelly has filed an unfair labor charge under section 8(b)(4)(ii)(D) of the Act arising from Sheet Metal's continued prosecution of its case against Donnelly, Sheet Metal's case against Donnelly must be stayed until the Board acts on Donnelly's charge.  The Board argues there is reasonable cause to believe that Sheet Metal has violated and is continuing to violate section 8(b)(4)(ii)(D) by continuing the Sheet Metal Action against Donnelly and thus, a partial stay should issue.

A.  <u>PROCEDURAL BACKGROUND</u>

The facts and procedural history of the Sheet Metal Workers' Action have been set forth by this Court in an Opinion filed March 27, 2008.  (See Docket Entry No. 60, Civil Action No. 07-3023).  For the ease of the parties, they are recited below.

1.  Sheet Metal Workers' Action

The Sheet Metal Workers' Action involves a dispute regarding the construction of the Egg Harbor Township Community Center (the "Community Center").  The Community Center was to be constructed pursuant to the provisions of a Project Labor Agreement ("PLA") established pursuant to N.J. Stat. Ann. § 52:38-1 et seq.  Egg Harbor Township ("Egg Harbor"), the owner of the Community Center, required that any party who desired to work on the Community Center had to execute the PLA.  As the township administrator for Egg Harbor has explained, the purpose of entering into the PLA was to ensure the project was union-built and to provide for efficiency, safety, quality, construction, and the timely completion of the building.  (See PLA, Ex. A to Complaint [Case No. 1:07-cv-3023 (RMB) [Docket No. 1]].)

Pursuant to Article 2, Section 4 of the PLA,

> together with the local Collective Bargaining Agreements appended hereto as Schedule A represents the complete understanding of all signatories and supersedes any national agreement, local agreement or other collective bargaining agreement of any type which would otherwise apply to this Project(s) in whole or in part.

Id.

The Defendants deny that Local 27's Collective Bargaining Agreement ("CBA") was appended to Schedule A and also deny that they assented to that CBA.

Sambe Construction Company ("Sambe") was the general contractor on the Community Center and, as required by Egg Harbor, a signatory to the PLA.  On March 30, 2007, Sambe

3

subcontracted the work of installing prefabricated standing seam metal roofing, soffit, fascia, and related trim to Donnelly. Donnelly, as required by Egg Harbor, signed a letter of assent (the "Letter of Assent") binding it to the terms and conditions of the PLA. Specifically, in signing the Letter of Assent, Donnelly agreed that any party it selected to perform the standing seam metal roofing work was required to be a signatory to the PLA as well. The Letter of Assent provided, in relevant part, that,

> [Donnelly], for and in consideration of the award of a Contract to perform work on [the] Project, and in further consideration of the mutual promises made in the Project Labor Agreement, a copy of which was received and is acknowledged, hereby:
>
>        * * *
>
> Agrees to secure from any Contractor(s) (as defined in said Project Labor Agreement) which is or becomes a Subcontractor(s) (of any tier), a duly executed Letter of Assent in form identical to this document prior to commencement of any work.

Contrary to the express terms of the Letter of Assent it executed, Donnelly assigned the foregoing work to the United Brotherhood of Carpenters and Joiners of America, Local Union No. 623 ("Local 623"). (Donnelly had a collective bargaining agreement with Local 623.) Local 623 was not a signatory to the PLA and, indeed, refused to execute the PLA.

4

A few days later, Sheet Metal/Local 27 invoked the PLA's provisions for settling jurisdictional disputes.  Local 27 claimed a right to the roofing work because it, unlike Local 623, was a signatory to the PLA. Local 623 also claimed a right to the work because it had a collective bargaining agreement with Donnelly.  Moreover, Local 623 threatened to picket the Community Center if the work was reassigned by Donnelly to Local 27.

Local 27, believing that it was following the express terms of the PLA regarding jurisdictional disputes, (set forth in Article 10), scheduled an arbitration hearing before arbitrator Stanley Aiges to be held on June 5, 2007, in order to resolve the dispute over the work assignment.  At or about the same time, Donnelly filed an unfair labor practice charge with the Board against Local 623.  This dispute gave rise to a jurisdictional dispute between two parties and gave the Board jurisdiction to hear the case pursuant to section 10(k) of the Act.

On June 1, 2007, counsel for Local 623 sent Arbitrator Aiges a letter informing him of its position that the PLA does not conform with federal or New Jersey law.  Local 623 declined an invitation to participate in the arbitration hearing.

Following the hearing, at which Sheet Metal, Donnelly and Sambe - but not Local 623 -  were present, Arbitrator Aiges awarded the disputed work to Local 27 citing "area practice." More specifically, Aiges found that the "prevailing area practice

for the installation of the disputed work at the Egg Harbor
Township Community Center favors the assignment of that work to .
. . Local 27."

Because Donnelly did not assign the roofing work to Sheet
Metal pursuant to Arbitrator Aiges' award, Local 27 filed a
grievance pursuant to Article 10 of its collective bargaining
agreement seeking confirmation of the arbitration award.
Pursuant to Local 27's collective bargaining agreement, the Local
Joint Adjustment Board ("JAB") held a hearing on July 16, 2007.
Although both Sambe and Donnelly were invited to attend, they did
not.  Prior to the JAB hearing, both Sambe and Donnelly informed
the JAB that they would not participate in the proceeding and
that they believed the JAB lacked jurisdiction over the matter.

Thereafter the JAB issued its decision and determined that
Donnelly and Sambe, by assigning the roofing work to Local 623,
violated the PLA and Local 27's collective bargaining agreement.
The JAB further found that if the work was not reassigned to
Local 27, then Sambe and Donnelly were responsible for wages and
benefits in the amount of $428,319.26.

On August 20, 2007, Sheet Metal filed a petition ("the Sheet
Metal Action") with this Court for an Order to Show Cause why a
Preliminary Injunction should not issue for Defendants' failure
to comply with the arbitration awards.  The Court denied the

petition primarily on the grounds that Sheet Metal had failed to make a showing of irreparable injury.

    2.  Board's December 10, 2007 Decision

    On December 31, 2007, the Board issued its ruling in the 10(k) proceeding.  The Board concluded that Local 623 was entitled to the roofing work.  The Board found that the factors of employer preference, current assignment and past practice, and economy and efficiency of operations favored awarding the disputed work to Local 623-represented employees; the factors of collective bargaining agreements, area and industry practice, and relative skills and training did not favor awarding the work to either union's employees.

    In its ruling the Board specifically stated that its decision to award the roofing work to Local 623 did not invalidate the PLA.  Indeed, the Board stated that Donnelly continued to be bound by the terms of the PLA:

> [The Boards's decision] would not prevent Egg Harbor
> Township from exercising its authority under state law to
> negotiate and execute project labor agreements, nor would
> it invalidate the PLA. [Donnelly] would continue to be
> bound under the terms of the PLA, and the parties to the
> PLA would retain any rights they may have under state law
> to bring a suit for damages against the employer for any
> breach of the PLA.

United Brotherhood of Carpenters and Joiners of America, Local

Union No. 623 and E.P. Donnelly, Inc., and Sheet Metal Workers'

International Assoc., Local 27, AFL-CIO, 351 N.L.R.B. No. 97 at
* 4 (Dec. 31, 2007) (hereinafter "10(k) Decision").


    3.  Sheet Metal's Summary Judgment Motion

    Prior to the Board's decision, Local 27 had filed a motion
for summary judgment with this Court seeking to enforce the PLA
and the arbitration and JAD awards.  On March 27, 2008, the Court
denied Local 27's motion and held that the validity of the PLA
was an issue in dispute that needed to be developed in the
discovery process.

    The Court also addressed the enforceability of the JAB
awards.  The Court ruled that assuming the validity of the PLA,
the PLA's "supremacy clause" required that any jurisdictional
disputes resolved through arbitration may be enforced in any
court of competent jurisdiction.  Both Sambe Construction and
Donnelly had argued, and the Court agreed, that the sole method
for enforcing the arbitration award was to seek court enforcement
and thus Plaintiff's choice to attempt to enforce the awards
through the process set forth in its own CBA was not enforceable.

    The Court also addressed the parties' disagreement regarding
the recent preclusive effect of the 10(k) decision rendered by
the Board.   Donnelly had argued that even if the PLA was valid
there could be no remedy for the Plaintiff because the Board had
explicitly found Local 623 was entitled to the work.  In essence,

8

Donnelly argued, the Board's 10(k) determination left Sheet
Metal/Local 27 with no remedy.  Donnelly also argued that the
remedy of "pay in lieu of work" was similarly unattainable by
Sheet Metal.  Although the Court did not rule on the dispute, the
Court indicated that it disagreed with the "implied end of
Donnelly's position – that there is no monetary remedy for
Plaintiff even if the PLA is valid and [Donnelly and/or Sambe]
breached that contract."  (See Op. at 20 [Case No. 07-3023 (RMB)
[Docket No. 60]].)  Just as the Board had opined, so did this
Court, that under a valid PLA, Sheet Metal might well be entitled
to a monetary remedy against Donnelly.


4.   Donnelly's Unfair Labor Practice Charge and the Board's
     Emergent Application for 10(k) Injunctive Relief

Shortly after the Board's decision, but prior to this
Court's ruling on the summary judgment motion, Donnelly filed an
unfair labor practice charge with the Board.  Donnelly alleged
that Local 27 was violating section 8(b)(4)(ii)(D) of the Act by
"continuing to prosecute its action in federal district court
[the Sheet Metal Action] to enforce arbitration awards which are
contrary to the Board's 10(k) determination."  (Ex. 1 to Amd.
Pet.)  The Board, however, did not seek to enjoin the Sheet Metal
Action at that time.  Instead, on April 18, 2008 – approximately
three months after Donnelly filed its charge and three weeks
after the Court denied the summary judgment motion – the Board

filed the within emergent application to enjoin the Sheet Metal Action from proceeding as to Donnelly.

On May 20, 2008, the parties appeared before the Court to address the Board's emergent application, brought as an Order to Show Cause.  At that time the Court indicated that it would not rule on the petition because Sheet Metal, through counsel, had requested an opportunity to amend its pending Complaint to conform to the Board's 10(k) decision.  Accordingly, the Court permitted Sheet Metal an opportunity to file a motion for leave to amend and if granted, the Petitioner would be permitted to file an amended Petition, or withdraw its request altogether, however it deemed appropriate.


5.  Sheet Metal Amended Complaint Post-Board Decision;
    Board's Amended Petition for Injunctive Relief

On June 25, 2008, the Court, having received no opposition from any party, permitted the filing of Sheet Metal's Second Amended Complaint.  The Second Amended Complaint invoked the jurisdiction of this Court on two grounds: 29 U.S.C. § 301 and 28 U.S.C. § 1332 (diversity of citizenship).  Thereafter, on June 30, 2008, the Petitioner filed an Amended Petition for Injunction under section 10(*l*) of the Act.


6. Decision of the Administrative Law Judge on Donnelly's
   Unfair Labor Practices Charge

On August 18, 2008, Administrative Law Judge Joel P.
Biblowitz ("the ALJ"), for the National Labor Relations Board,
issued a decision on Donnelly's Unfair Labor Practices charge, in
which it ruled that Sheet Metal's prosecution of its suit against
Donnelly, as well as Sambe, was an unfair labor practice under
section 8(b)(4)(ii)(D) of the Act.  The ALJ ordered Sheet Metal
to cease and desist prosecuting the action against Donnelly, as
well as Sambe,[1] and either to withdraw its requests for damages
(limiting its requested relief to a declaratory judgment), or to
withdraw the lawsuit entirely.  <u>Sheet Metal, Local 27 v. E.P.
Donnelly, Inc. v. Carpenters, Local 623</u>, Case No. 4-CD-1188, Aug.
18, 2008, at *6-7 (hereinafter the "<u>ALJ Decision</u>").  (Sheet Metal
may file exceptions by September 15, 2008.  The decision of the
ALJ is subject to review by the National Labor Relations Board
and the Third Circuit.)

B.   <u>LEGAL DISCUSSION</u>

1.   <u>Section 10(*l*) of Act</u>

Section 10(*l*) of the Act permits the Board to seek
injunctive relief whenever it appears that a party is committing
an unfair labor practice under section 8(b)(4)(ii)(D) by

---

[1] Petitioner seeks here to enjoin the prosecution of the
case against Donnelly only, not Sambe.  The ALJ's decision as to
Sambe is therefore perplexing.

prosecuting a civil case that conflicts with a decision of the Board. Thus, the predicate to seeking a section 10(*l*) injunction is a charge that a party has engaged in such unfair labor practice. Hoeber v. Local 30, 939 F.2d 118, 122 (3d Cir. 1991) (hereinafter "Local 30 I"). Once the Board receives such charge, the Board is required to make a preliminary investigation of it, and if there exists reasonable cause to believe that the charge is true, the Board is permitted to petition for injunctive relief. Id.

The purpose of obtaining injunctive relief under section 10(*l*) is to preserve the status quo until the Board has an opportunity to adjudicate the charge. Thus, the inquiry of the District Court is limited to whether or not the Board has reasonable cause to believe that a violation of the Act has occurred, not that the Board has, in fact, proven such violation. Schauffler v, Local 1291, International Longshoremen's Association, 292 F.2d 182, 187-88 (3d Cir. 1961).

"Reasonable cause" means that the Board has shown that its legal theory establishing the elements of an unfair labor practice is "substantial and not frivolous." Samoff v. Building & Construction Trades Council of Philadelphia & Vicinity, 475 F. 2d 203 (3d Cir. 1973), vacated for mootness, 414 U.S. 808 (1973). In addition to the element of "reasonable cause," the Court must

12

also find that the injunctive relief is "just and proper."
Local 30 I, 939 F.2d at 121.

    a.  <u>Reasonable Cause</u>

       The Court turns to the first factor, whether Petitioner has
established a substantial and nonfrivolous legal theory on the
basis of which the Sheet Metal Action could constitute an unfair
labor practice.  A lawsuit which "has an objective that is
illegal under federal law" may be enjoined as an unfair labor
practice.  <u>Bill Johnson's Restaurants v. NLRB</u>, 461 U.S. 731, 737
n.5 (1983).  The pursuit of a section 301 suit that directly
conflicts with a section 10(k) determination has an illegal
objective and is enjoinable as an unfair labor practice under
section 8(b)(4)(ii)(D).  <u>Local 30 v. NLRB</u>, 1 F.3d 1419, 1426 (3d
Cir. 1993) (hereinafter "<u>Local 30 II</u>").  An unfair labor practice
also exists when the alleged misconduct aims to coerce an
employer "either to violate the [Board's] order or the court's
decree."  <u>Associated General Contractors of America v.
International Union of Operating Engineers</u>, 529 F.2d 1395, 1397
(9th Cir. 1976).

       Petitioner asserts that the relief sought by Sheet Metal
"directly contradicts" and is "incompatible with" the Board's
10(k) decision to award the disputed work to Local 623. (Pet. Br.
at 14).  Specifically, Petitioner argues that the Second Amended
Complaint contravenes the Board's decision because it seeks (a)

to enforce the arbitrator's decision to reassign the work to it
and (b) monetary relief for damages caused by Donnelly's failure
to assign the work.  The Court rejects these arguments.

First, there is no request in the Second Amended Complaint
for reassignment of the work to Sheet Metal.  Indeed, the Second
Amended Complaint states that the work has already been
completed.  (2d Amd. Complt. ¶ 35.)  Count One seeks a
declaratory judgment that the arbitration award is legal and
binding "to the extent that Arbitrator Aiges held that Donnelly
and Sambe violated the PLA." (2d Amd. Complt. ¶ 49(A)(ii).)
Counts Two and Three likewise allege a violation of the PLA.
Nowhere in the Second Amended Complaint does Sheet Metal seek a
reassignment of the roofing work.  Throughout its opposition
papers, Sheet Metal confirms that it is seeking relief under the
PLA only.

Second, the complaint seeks monetary damages for a breach of
the PLA only, a right the Board opined that Sheet Metal retained.
The Board specifically opined that the Sheet Metal Action
relating to the PLA breach could continue.  The Board assumed
without deciding that Donnelly entered into conflicting contracts
-- the PLA and the CBA -- that obligated it to grant the disputed
work to Sheet Metal and to Local 627, respectively.[2]  10(k)

---

[2] The Court today proceeds on the same assumption.  Nothing
in this Opinion shall be construed to suggest that Donnelly did,
in fact, breach the PLA.  This issue of fact remains unresolved.

Decision, at *4.  Based on extra-contractual factors such as
employer preference, past practice, and efficiency of operations,
the Board awarded the disputed work to Local 623.  10(k) Decision
at *4-6.  Still, the Board held, Donnelly "would continue to be
bound under the terms of the PLA, and the parties to the PLA
would retain any rights they may have under state law to bring a
suit for damages against [Donnelly] for any breach of the PLA."
10(k) Decision at *4 (emphasis added).  In other words, the Board
narrowly determined which party should receive the disputed work,
but it did not excuse Donnelly from its state-law contractual
obligations under the PLA.

Petitioner asks the Court to ignore the Board's assurance
that Sheet Metal would retain its state-law rights under the PLA
to sue for contract damages.  Petitioner asserts, first, that the
Board's assurance merely emphasized the "general proposition that
Donnelly would continue to be bound under the terms of the PLA,"
and, second, that the Board "would not have known that Respondent
. . . would continue to maintain its lawsuit after the issuance
of the Section 10(k) award."  (Pet. Br. at 15).

The facts do not support this account.  The Board was aware
of the Sheet Metal Action at the time it rendered its decision,
and, indeed, was even presented with portions of a transcript
conducted before this Court to consider in rendering its 10(k)

15

decision.[3]  The Board had knowledge of Sheet Metal's legal
position but nevertheless expressly countenanced the continuation
of the Sheet Metal Action against Donnelly insofar as it alleged
a breach of the PLA.

Furthermore, Petitioner's argument that the Board was
contemplating only hypothetical unrelated suits that might arise
under the PLA in the future, and not the ongoing Sheet Metal
Action, is implausible.  This reading is plainly belied by the
Board's sweeping assurance that parties would retain "<u>any</u> rights"
under the PLA to sue for "<u>any</u> breach."  If the Board intended to
exclude the ongoing Sheet Metal Action from its broadly worded
assurance, it would have done so clearly.

In its reply memorandum, Petitioner offers a slightly
different account, arguing that the Board's assurance was merely
responding to Sheet Metal's position that the Board could not
award the disputed work because the PLA was authorized by a New
Jersey statute that is not preempted by the Act.  The Board
rejected that argument, maintaining that it had jurisdiction to
award the disputed work but that the parties retained their
contract rights under the PLA.

Finally, Petitioner contends that the Board must not have
meant what it appears to have said because "if . . . the Board

---

[3]In its reply memorandum, Petitioner argues that the Board
rejected these transcripts.  That is beside the point.  The Board
was aware of the proceedings from, <u>inter</u> <u>alia</u>, these transcripts.

had intended to overrule decades of precedent in its 10(k)
Decision, it would have said so." (Pet. Reply at 9).[4]
Petitioner points to general Third Circuit precedent holding that
an action seeking monetary damages amounts to a challenge of a
10(k) award of disputed work. <u>See Local 30 II</u>, 1 F.3d at 1427-
29. This argument – which the Court rejects as discussed below –
fails to address, even recognize, the factual distinctions
presented by this case.

In short, the Board's 10(k) decision specifically held the
Sheet Metal Action to be compatible with it. The Petitioner's
current reversal, that this lawsuit is an unfair labor practice,
is not only unsupported (as discussed below), but unfair, in and
of itself.

Even assuming that the Board did not mean what it said, as
Petitioner argues, Petitioner's argument, that Sheet Metal's
request for damages is a "collateral attack on the 10(k) award,"
(Reply at 5), is without merit. It is an argument the Petitioner
makes without any analysis of the factual distinctions - the
genesis of the jurisdictional dispute - presented by this case.
Petitioner relies on the Third Circuit's general holding in <u>Local
30 II</u> that "a union is [not] permitted to recover damages for

---

[4] Notably, the ALJ, who agreed that the Second Amended
Complaint was consistent with the Board's 10(k) decision,
"reluctantly" accepted Petitioner's argument that the Board must
not have meant what it said. <u>ALJ Decision</u> at *5.

work awarded to another union in a section 10(k) proceeding . . .
.″  1 F.3d at 1428.  Petitioner infers from <u>Local 30 II's</u>
holding, and urges this Court to infer, that an employer acting
in accord with a 10(k) ruling is <u>never</u> liable for damages to the
disappointed union.  The Court does not take <u>Local 30 II</u> to reach
so far.

<u>Local 30 II</u> was limited to a dispute arising from an
employer's obligations under multiple collective bargaining
agreements.  (It is quite common for employers to enter into
multiple collective bargaining agreements that produce
jurisdictional disputes between unions.  <u>See Associated General
Contractors of America v. International Union of Operating
Engineers</u>, 529 F.2d 1395, 1397 (9th Cir. 1976)).[5])  Here, Donnelly
did not have two collective bargaining agreements that generated
a dispute, but rather, Donnelly created the dispute when it
assented to be bound to the terms of the PLA.  As a <u>condition
precedent</u> to Donnelly accepting its role as subcontractor on the

_____

[5] The facts before the Court are different from the facts
presented in <u>Local 30 I</u>.  In that case, the contractor entered
into a memorandum agreement with Local 30 whereby it agreed to
use its represented employees "as of 11/18/88 through completion"
of the project.  The project was completed in February 1989.
Later that year, the contractor undertook another project at the
same landfill.  The contractor then hired workers represented by
Local 172, rather than members of Local 30, to do the work.
Thus, unlike the contractor in Local 30 who did not anticipate a
contract dispute (indeed, Local 30 maintained there was no
conflict), here, it is alleged that Donnelly knew at the time of
the signing of the Letter of Assent that it agreed to use the
signatory unions, of which Local 623 was not one.

Community Center, Donnelly agreed to use the union-represented employees who also had agreed to be bound by the terms of the PLA.  At the time of its execution of the Letter of Assent, then, Donnelly had a choice to make: either agree to the terms of a contract that would likely expose it to a claim for damages from a non-signatory union with whom it had a collective bargaining agreement, or not agree.[6]

Under Petitioner's reasoning, any time the Board assigns disputed work to one party, all of the employer's related contractual obligations disappear.  An employer could assume contractual obligations it had no intention of performing, and to the possible detriment of others, only to be absolved of those obligations under the guise of a 10(k) jurisdictional dispute decision of the Board.  Petitioner's argument taken to its logical conclusion would eviscerate project labor agreements such as the PLA at issue here, giving contractors a license to sign on to projects with no intention of performing their contractual obligations.  Local 30 II did not so hold, and neither does the Court today.[7]

_____

[6] It is of importance to note that had Donnelly had collective bargaining agreements with more than one signatories to the PLA who competed for the same work, for example, both Sheet Metal and Local 623, that jurisdictional dispute would go before the Board (and presumably there would be no claim of a PLA breach).  These are not the facts here.

[7] This Court again notes that the parties have alleged that Donnelly breached the PLA.  Nothing in this Opinion shall be

Accordingly, for the reasons set forth above, the Board has failed to convince this Court, by a substantial and nonfrivolous legal theory, that the Sheet Metal Action constitutes an unfair labor practice.

### b. Just and Proper Standard

Even assuming that an unfair labor practice was properly charged and the Board had established reasonable cause that such practice has occurred, injunctive relief is not the "just and proper" remedy.

"[I]njunctions against the prosecution of a lawsuit are a highly disfavored remedy." Local 30 I, 939 F.2d at 127.  The Supreme Court has held that there must be two factors present before an injunction against such prosecution may issue: an improper motive by the plaintiff, and a lack of reasonable basis in law for the suit.  Bill Johnson's Restaurants, Inc. v. N.L.R.B. Sheet, 461 U.S. 731 (1983).  As set forth above, the Petitioner has failed to establish reasonable cause for the unfair labor practice charge lodged by Donnelly.  Nor has the Petitioner demonstrated an improper motive on the part of Sheet Metal.  To the contrary, Sheet Metal has continued to prosecute

_____

construed by the Court that Donnelly did, in fact, breach the PLA.  As the Court ruled in its denial of Sheet Metal's summary judgment motion, this is an issue of fact that remains unresolved.

its case, first, after this Court had already ruled that it was likely to succeed on the merits, and second, after the Board authorized Sheet Metal to pursue its PLA claim. It would therefore be unjust for an injunction to issue.

Generally, the issuance of an injunction is " 'just and proper' where such relief is 'necessary to prevent frustration of the remedial purposes of the Act." Local 30 I, 939 F.2d at 121 (quoting Scott v. El Farra Ent., Inc., 863 F.2d 670, 674 (9th Cir. 1988)). The remedial purpose of the Act "is to preserve the status quo pending adjudication by the NLRB in order to protect the efficacy of the Board's final order." Henry H. Perritt, Jr., Labor Injunctions, § 7.8 at 274 (1986); see also Schauffler v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182, 188 (3d Cir. 1961). This policy is most acute when the conduct alleged to be an unfair labor practice causes permanent harm to the complaining employer. See, e.g., Squillacote v. Graphic Arts International Union Local No. 277, 388 F. Supp. 258, 264 (D. Wis. 1975) (noting that the offending practice threatened to put the complaining employer out-of-business permanently). In this case, by contrast, the efficacy of the Board's final order is not in danger, because the disputed work has already been completed and there is no risk of permanent injury to Donnelly.

Nor does declining to grant the injunction "threaten [a] danger of harm to the public," Local 30 I, 939 F.2d at 126

21

(quoting Retail Clerks Local 137 v. Food Employers Council, Inc.,
351 F.2d 525 (9th Cir. 1965)), as Petitioner alleges.  Just as
the Third Circuit held in Local 30 I, Sheet Metal "merely filed a
lawsuit; it did not engage in actions that obstruct the free flow
of business or threaten harm to the public."  Id.  Petitioner
argues that harm to the public lies in "a lawsuit in another
tribunal that could potentially conflict with or undercut the
finality of the Board's award."  (Pet. br. at 18).  As previously
discussed, the Court rejects Petitioner's premise that this
litigation undermines the Board's 10(k) award of disputed work.
To the extent the Board will pass judgment on Petitioner's claim
under section 8(b)(4)(ii)(D), a pending lawsuit before this Court
does nothing to cast doubt on the Board's authority – and
certainly does not justify the "highly disfavored remedy" of an
injunction.

Throughout its papers, the Board speaks of the public harm
arising from conduct that undermines the Board's authority to
resolve disputes.  It is a legitimate concern.  But the Court has
an obligation to ensure that the serious remedy of injunctive
relief is not abused.  Here, the effect of an injunction would
allow Donnelly to use the Board as a shield from the decision it
made to assent to the terms of the PLA.  To allow the Board to
come before this Court under the guise of a jurisdictional

dispute to, in effect, undo Donnelly's contractual obligation, would be inappropriate.[8]

One final observation about the "remedial purposes" of the Act must be raised – an observation that cuts to the fundamental misunderstanding evinced by the Petitioner's papers and even the ALJ's decision.  Petitioner and the ALJ discuss the Act's remedial scheme as though its purpose were to <u>protect employers</u> from paying twice when two unions claim a right to disputed work. The underlying assumption seems to be that the 10(k) procedure is supposed to be a sort of absolution for employers that find themselves stuck between conflicting contractual obligations they created.

To the contrary, the 10(k) procedure exists to resolve the inevitable jurisdictional disputes that arise between unions without costly work stoppages, not to exonerate employers with unclean hands.  <u>Associated General Contractors of America</u>, 529 F.2d at 1397.  The section 8(b)(4)(ii)(D) and section 10(*l*) remedies exist to safeguard the integrity and finality of the 10(k) award so the disputed work can proceed (as it has here), not to insulate the employer from the consequences of its alleged conduct.

---

[8]  Again, it bears repeating that this is not a situation where two unions are signatories to the PLA, a scenario quite different from the one here.

Evidence of this misunderstanding is particularly stark in the ALJ's order, which permits Sheet Metal to maintain its request for declaratory relief (located in Second Amended Complaint, paragraph A), but orders Sheet Metal to withdraw its requests for damages.  In other words, the District Court may declare that the Board's 10(k) award was wrong, but may not award Sheet Metal any money.  Why permit Sheet Metal to seek declaratory relief if a declaratory judgment would itself undermine the integrity of the 10(k) award?  The Petitioner, as well as the ALJ, appear to assume that the statute exists to protect the employer's financial interests, not the integrity of the Board's 10(k) award.  This assumption is incorrect.

Since the remedial purposes of the Act are, first, to resolve jurisdictional disputes between unions competing for the same work, and second, to safeguard the integrity and finality of the Board's resolution of those disputes so the work can continue, the Court holds that issuing a 10($l$) injunction is not necessary to prevent frustration of those purposes.  In sum, injunctive relief is not just and proper.

III.  <u>CONCLUSION</u>

For the foregoing reasons, the Petitioner's request for an order enjoining the Sheet Metal Action pursuant to section 10($l$)

is denied.  Sheet Metal may continue to prosecute this case against all parties.  An accompanying Order will issue this date.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: September 2, 2008